# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHAMPIONSWORLD, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES SOCCER FEDERATION, INC., MAJOR LEAGUE SOCCER, LLC and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 06 C 5724<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiff ChampionsWorld has filed a Motion for Reconsideration, or in the alternative for certification for immediate appeal, of this Court's May 4, 2007, Order (hereinafter, "the Decision") staying this litigation pending arbitration. For the following reasons, ChampionsWorld's Motion is **Denied.**

The factual background of this dispute, its current procedural status, and the reasoning underlying the Decision are all set forth in that document. The Court will thus proceed directly to its review of the instant motion. This Opinion will employ the same shorthand terminology used in the Decision.

### I. MOTION TO RECONSIDER

Motions for reconsideration serve a limited function. Ordinarily, a court will only grant a motion for reconsideration to correct manifest errors of law or fact, or to consider newly

discovered evidence that could not have been adduced during pendency of the previous motion. *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987); *Kohl v. Murphy*, 767 F.Supp. 895, 904 (N.D. Ill. 1991). A manifest error "is not demonstrated by the disappointment of the losing party," but "is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation marks omitted).

ChampionsWorld has neither presented new evidence nor shown that any part of the Decision constituted "manifest error." ChampionsWorld's arguments in support of this motion primarily restate arguments that ChampionsWorld made, and that this Court rejected, during the previous two rounds of briefing on the arbitrability of this dispute. A motion for reconsideration is not an opportunity to take a second bite at the apple and reargue issues already adjudicated. *Chicago Dist. Council of Carpenters Pension Fund v. Vacala Masonry, Inc.*, 967 F.Supp. 309, 313 (N.D. Ill. 1997). Consequently, the Court will not here address all of ChampionsWorld's arguments in support of its motion for consideration except to refer the parties back to the reasoning articulated in the Decision.

Several aspects of ChampionsWorld's current motion do, however, merit discussion to correct ChampionsWorld's apparent misconceptions about the Decision's reasoning and to ensure clarity

in the record. First, contrary to ChampionsWorld's suggestion, the Decision did not "f[ind] that USSF's mandatory Illinois forum selection clause was 'merely intended to prescribe the method of judicial enforcement of arbitration.'" The Decision concluded only that the two relevant dispute resolution agreements were not so inconsistent as to overcome the law's strong presumption in favor of arbitrability. *See, Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."). More specifically, the FAA places a high burden on parties seeking to show waiver of arbitration rights. *See Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 641 (7th Cir. 1981). Having found that Stillitano's application for a match agent license vested USSF with arbitration rights, the Decision concluded – based on substantial case law – that USSF's continued use of the forum selection clause in its match agreements was not so inconsistent with its newly vested arbitration rights as to constitute a waiver of those rights. In short, the Decision took into account (and ChampionsWorld ignores) the law's proarbitration bias.

It is also worth noting that ChampionsWorld's current insistence that litigation in Illinois must displace all other dispute resolution possibilities because the forum selection clause uses the terms, "exclusive," "mandatory," and "fully-integrated,"

differs from the position ChampionsWorld took when it initially filed this case in the Southern District of New York. There, arguing to keep the case in that district, ChampionsWorld told the court that it "chose to bring this action in the forum it genuinely believed had proper venue and jurisdiction." (P. S.D.N.Y. Resp. at 12). Reconciling this statement with ChampionsWorld's current position would require the Court to read a "mandatory" and "fully-integrated" forum selection clause giving Illinois courts "exclusive jurisdiction" as prohibiting arbitration but permitting litigation outside of Illinois. Such a result requires too subtle a justification for its rejection to constitute "manifest error."

Second, ChampionsWorld asserts that the Decision contradicted itself when it found the forum selection clause consistent with an intent to specify the forum of post-arbitration litigation while at the same time noting the possibility that the FAA may not permit vacatur of an arbitration award rendered outside the district in which vacatur is sought. There is no contradiction between these two statements. The one sentence of dictum about hypothetical vacatur jurisdiction aside, the Decision said nothing about vacating an arbitration award beyond its conclusion that the FAA does not provide the Court with jurisdiction to do so prospectively. Moreover, there is no question that the FAA would provide this Court with the power to **enforce** a FIFA arbitration award, and there is no reason to think that when the parties signed

the match agreements, they could not have intended to provide for **_enforcement_** of arbitration awards in Illinois, regardless of whether it would be possible for either of them to **_vacate_** an arbitration award in Illinois.

Third, ChampionsWorld contends that the Court's reading of the phrase "action or proceeding" in the forum selection clause was manifestly erroneous, and that even USSF has acknowledged that the Court misconstrued the phrase. For the clarity of the record, it should be noted that what the USSF actually said was that "the Court's conclusion that the phrase 'judicial action or proceeding' in the forum selection clause could reasonably be interpreted to refer to litigation following arbitration is far from 'manifest error.'" (D. Reconsid. Resp. at 5). The Court does not view this statement as an assertion that the Court's reading of "action or proceeding" was erroneous, especially in light of USSF's subsequent citation to Federal Rule of Civil Procedure 81(a)(3) as further support for the Decision's reading of "proceeding." *See also*, 9 U.S.C. § 3 (providing for stay of any "suit or proceeding" referable to arbitration). In any case, ChampionsWorld's reference to a definition of "proceeding" that they contend supports their position is not only insufficient to merit reconsideration, it would have been insufficient to defeat arbitrability in the first instance. This is because, to return to a familiar theme, ChampionsWorld takes no account of the law's strong presumption in

favor of finding arbitrability. As the cases cited in the Decision make clear, linguistic ambiguity in contracts potentially affecting arbitration rights must be resolved in favor of arbitration. ChampionsWorld has not shown that the forum selection clause's use of the word "proceeding" unambiguously displaces arbitration as a dispute resolution mechanism.

Fourth, ChampionsWorld challenges the Decision's agency finding. ChampionsWorld seizes on a sentence in the Decision that used the term "license" rather than "license application" when referring to the agreement that bound ChampionsWorld to arbitrate. Pointing out that the match agent license itself does not name ChampionsWorld, ChampionsWorld argues that the Decision's agency finding was therefore based on a manifestly erroneous reading of the record. Although the Court believes that the Decision's meaning was clear, the Court will here make explicit that the "agreement in writing" that binds ChampionsWorld to the MARs' arbitration provision is not the license itself – it is the **license application** in which Stillitano affirmed, as he was required to in order to get the license, that he was "fully conversant with the terms of [the MARs]" and that he "fully and unconditionally accept[ed] the conditions therein." As that application was written on ChampionsWorld letterhead and was signed, "Charlie Stillitano, CEO," the Decision did not misread the record.

Fifth, ChampionsWorld finds manifest error in the fact that the Decision did not address ChampionsWorld's reliance on the so-called "touch matters" test. According to ChampionsWorld, this test holds that a non-signatory may not be bound to an arbitration agreement unless it has made allegations that "touch matters" covered by the agreement containing the arbitration clause. (P. Mtn. Reconsid. at 9). To begin with, contrary to ChampionsWorld's suggestion, it does not appear that the Seventh Circuit has ever actually adopted the "touch matters" test (at least not as ChampionsWorld formulates it). This Court has found only one arbitrability decision in which the Seventh Circuit has ever even used the phrase "touch matters," and that decision merely noted that a dispute **must be arbitrated if** its allegations touch matters covered by the agreement, *CK Witco Corp. v. Paper Allied Indus.*, 272 F.3d 419, 422 (7th Cir. 2001), which is a logically distinct (and far narrower) proposition than that a dispute **cannot be arbitrated unless** its allegations meet the "touch matters" test. Moreover, the Decision's agency finding means that ChampionsWorld **was** a signatory of the license application, *see Black's Law Dictionary* 1387 (7th Ed. 1999) (defining "signatory" as "[a] party that signs a document, **personally or through an** agent. . . .") (emphasis added), and so, by ChampionsWorld's own statement that the "touch matters" test applies to non-signatories, the test is inapplicable here.

Finally, in the interest of completeness, the Court notes that the Complaint's allegations do "'touch matters' covered by the [relevant] [ ] agreement." The Complaint alleges that USSF extorts unlawful sanctioning fees from match agents by threatening to disparage non-compliant agents to FIFA. As noted above, the "relevant agreement" is ChampionsWorld's acceptance of the MARs, Article 5 of which requires national associations to endorse or object to a prospective match agent's licensure. Although the Complaint uses the term "disparage," rather than referring to objections or endorsement withdrawals, the Court was and is satisfied that Article 5 of the MARs, along with the fact that the Complaint involves the same general subject matter as the MARs (*i.e.*, match agency and the arrangement of matches), would provide a more than adequate link between ChampionsWorld's allegations and the MARs to satisfy the "touch matters" test, were it applicable.

## II. <u>CERTIFICATION FOR IMMEDIATE APPEAL</u>

ChampionsWorld seeks certification of three issues: (1) "[d]oes the Seventh Circuit's 'estoppel' doctrine, through which a non-signatory can be bound to arbitrate, require the non-signatory to be capable of directly receiving consideration under, or being directly bound by, the contract containing the arbitration provision"; (2) "[f]or a non-signatory to be able to compel arbitration, does the Seventh Circuit require the claims at issue to be 'intimately founded in and intertwined with the underlying

contract;'" and (3) "[d]oes the Seventh Circuit require a 'touch matters' test under the FAA to bind non-signatories to an arbitration clause, which the decision does not address." None of these issues is proper for interlocutory appeal.

To begin with, ChampionsWorld has identified no case (and this Court has found none) in which a court in this circuit certified the immediate appeal of an order granting a stay pending arbitration. This makes sense, given that the FAA expressly limits such appeals to the conditions set forth in Section 1292(b), *see* 9 U.S.C. § 16(b), and that federal policy strongly favors quick and easy enforcement of arbitration clauses, *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22-23 (1983). It is easy to imagine how the FAA's goals of efficiently resolving disputes and enforcing contractual intent would be frustrated if courts allowed the immediate appeal of arbitration stay orders with anything approaching regularity. Rather than swiftly proceeding to arbitration, as federal law contemplates, apparently arbitrable disputes would first occupy months of the parties' and the federal judiciary's time and resources. *See Steele v. L.F. Rothschild & Co., Inc.*, 864 F.2d 1, 3 (2nd Cir. 1988) (noting that appeal of an interlocutory order is more appropriate where the order gives litigation precedence over arbitration, and that an order granting a stay pending arbitration presents the contrary situation); and *Commonwealth Ins. Co. v. Underwriters, Inc.*, 846 F.2d 196, 199 (3rd

Cir. 1988) (noting that routine appeal of stays pending arbitration would frustrate federal policies favoring arbitration and disfavoring "piecemeal review").

Thus, immediate appeal of the Decision is proper only if ChampionsWorld can demonstrate that its proposed issues satisfy all the requirements of Section 1292(b). *See* 9 U.S.C. § 16(b). Those requirements are that (1) there be an abstract question of law, (2) that question be controlling, (3) it be contestable, and (4) its resolution promises to speed up the litigation. *Ahrenholz v. Board of Trustees of University of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000).

First, generally speaking, interlocutory appeal of the Decision would contravene the fourth requirement because it would not promise to speed the litigation. While the Seventh Circuit theoretically could reverse the Decision and remand for this Court to try the matter, it also could affirm the Decision. There is thus a chance equal to the probability of affirmance that, following an interlocutory appeal, this case would ultimately proceed to arbitration with nothing having been accomplished but several more months of delay and resource expenditures.

Second, each of ChampionsWorld's proposed issues runs afoul of at least one of the other three Section 1292(b) requirements. The first proposed issue regarding estoppel, for example, is not controlling because this Court's ruling that ChampionsWorld is

bound to the MARs by agency principles was an independent basis for finding a binding arbitration agreement. The second proposed issue, for its part, is not contestable. ChampionsWorld's argument on this point is based on its flatly erroneous reading of the *Hughes* case, which the Decision rejected. The third proposed issue regarding the necessity of the "touch matters" test to bind non-signatories to arbitration agreements, for its part, is neither controlling nor contestable for the same reasons the Court stated above for denying reconsideration on this issue: the Seventh Circuit has never imposed the rule limiting the scope of broad arbitration clauses that ChampionsWorld seeks to have imposed here, the Decision found ChampionsWorld to be a signatory of the license application that unconditionally accepted the MARs, and the Complaint's allegations do "'touch matters' covered by the [relevant] [ ] agreement."

### III. CONCLUSION

For the reasons stated herein, ChampionsWorld's Motion for Reconsideration, or Alternatively, For Certification of Interlocutory Appeal, is **Denied**. This case remains stayed pending arbitration.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: July 31, 2007

- 11 -