IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CHAMPIONSWORLD LLC,**<br><br>        **Plaintiff,**<br><br>        **v.**<br><br>**UNITED STATES SOCCER FEDERATION, INC., MAJOR LEAGUE SOCCER, L.L.C. and DOES 1 through 10, Inclusive,**<br><br>        **Defendants.** | **Case No. 06 C 5724**<br><br>**Hon. Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

**I.  BACKGROUND**

On May 4, 2007, this Court granted the Defendants', United Sates Soccer Federation, Inc. (the "USSF") and Major League Soccer, Motion to Stay Pending Arbitration of the parties' dispute over the arrangement and promotion of international professional men's soccer matches played on U.S. soil. The Court determined that an arbitration clause contained in a "Match Agent's Regulations" bound Plaintiff, because its CEO, Charles Stillitano (hereinafter, "Stillitano"), had agreed to be bound by such regulations when he entered into a "Match Agent's Agreement" with the Federation Internationale de Football Association (the "FIFA"). Stillitano had personally entered into this agreement rather than the Plaintiff corporation because the rules of FIFA only permitted "natural persons" to be Match Agents. The Court ruled that

Plaintiff was bound because its agent had clearly entered into the agreement on its behalf. The Court further held that the issues between the parties, which included RICO, the Sherman Act, and related state laws, were subject of the arbitration clause because the provision provided that "[i]n the event of a dispute between a match agent and a national association, . . . the complaint shall be submitted to the FIFA Payers' Status Committee for consideration and resolution." The Court reaffirmed the ruling on July 31, 2007.

On November 8, 2007, Plaintiff filed a Claim for Arbitration against the Defendants. Plaintiff's petition raised the following claims: (1) vertical conspiracy between the two defendants to restrain competition through the use of USSF's unreasonable, arbitrary and discriminatory sanctioning fee terms; (2) conspiracy by the two defendants to monopolize the market for sponsorship of soccer matches by using predatory sanctioning fees against Plaintiff; (3) racketeering activities by the defendants operating as an association-in-fact enterprise to carry out an extortionate and fraudulent scheme against competition through use of sanctioning fees; (4) fraudulent inducement that USSF had exclusive and required authority to sanction matches; (5) unjust enrichment; (6) restitution due to USSF having no legal right to sanction matches; (7) restitution due to unconscionability of its contracts with USSF based on Plaintiff's lack of bargaining power to resist the imposition of exorbitant and discriminatory sanctioning fees

- 2 -

and bonds; and (8) restitution based on enforceability due to doctrine of duress.

On December 7, 2007, FIFA's Director of the Legal Division and its Deputy Head of Players' Status issued a letter stating that "our organization is not in a position to intervene in the present matter," due to the fact that its rules provided that only individuals could be parties before the decision making committees of FIFA. Plaintiff subsequently made repeated requests for a formalized decision from FIFA. In response, on August 13, 2008, FIFA wrote to Plaintiff reiterating its position that Plaintiff "cannot constitute a party before our deciding bodies." It also stated for the first time that Plaintiff's RICO and antitrust claims were not within the categories of disputes that its regulations allowed its deciding bodies to hear.

With this latest letter in tow, Plaintiff filed a motion in this Court to lift the stay. The Defendants objected on the grounds that they had not been appraised of Plaintiff's application and therefore had not had an opportunity to press their case for arbitration before FIFA. The Court granted Defendants sixty (60) days to see if they could change FIFA's mind. On September 4, 2008, the Defendant, USSF itself, sought to institute arbitration before FIFA, naming Stillitano rather than ChampionsWorld as the respondent. The USSF raised claims that did not facially implicate either RICO or the antitrust laws.

Specifically, Defendants' petition asks FIFA to decide whether USSF had the authority to require matches between foreign national teams first be sanctioned by USSF; does USSF have authority to impose sanctioning fees and require the posting of a bond to secure the fees; does USSF have to return the sanctioning fees previously paid to USSF; and does USSF have the right to notify FIFA if a match agent refuses to pay the sanctioning fees or post the bond.

On October 16, 2008, FIFA requested that Stillitano provide it with his reply by October 31, 2008. This letter stated that it was opening an investigation but that doing so was without prejudice to the question of whether FIFA had jurisdiction in the matter. Based on this letter, Defendants sought an additional sixty (60) days to obtain an official determination whether FIFA will accept jurisdiction to hear the case. The Plaintiff objected on the ground that it has a right to sue in U.S. Court because otherwise it would be required to forfeit its first-filed, non-arbitrable claims. The Court promised to rule on the request for an additional stay.

Since the parties were in court, Mr. Stillitano wrote FIFA objecting to FIFA considering USSF's request for arbitration against him. In the letter, he advised FIFA that the claims were brought by a group of creditors of ChampionsWorld with the approval of the U.S. Bankruptcy Court in New Jersey, rather than ChampionsWorld itself.

Shortly thereafter, on November 5, 2008, FIFA telefaxed a letter to Defendant USSF advising that it would submit the matter to the FIFA Players' Status Committee (apparently the arbitrational body) on November 27, 2008 to determine jurisdiction.

## II. **DISCUSSION**

Some principles supply the guide to whether this request to continue the stay should be granted. First, as stated previously, the question of arbitrability is one of contract interpretation and a party cannot be required to arbitrate any dispute which he has not agreed to arbitrate. *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241 (1966). It is up to the courts to determine whether the claim on its face is covered by the contract, *United Steel Workers of America v. American Manufacturing Co.*, 363 U.S. 564, 568 (1960). As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 475-76 (1989). Where the issue is fairly debatable, then the construction and the scope should be decided by the arbitrator. *Butler Products Co. v. Unistrut Corp.*, 367 F.2d 733, 736 (7th Cir., 1966).

Here the initial decision to compel arbitration was made as a result of a fairly clear provision in the Match Agent License application. There Stillitano agreed to be bound by the Match Agent Regulation that provided quite clearly that the matters in

issue should be arbitrable. While the Court was unaware that the FIFA rules governing arbitration limited applicability to individuals, this fact would not necessarily excuse Stillitano from being personally obligated to arbitrate, because he was the signatory to the license application and was the license holder. He certainly can arbitrate on his own behalf as well as on behalf of his corporation. Where a principle is bound under the terms of a valid arbitration clause, its agents are also covered under the terms of such agreements. *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d. 1110, 1121-22 (3rd Cir., 1993). While the Court notes that Plaintiff is being represented by its creditors, the Court does not believe that the creditors could not also be bound by the agreement to arbitrate.

Concerning which issues will be decided in arbitration and which will not, it is apparent from the correspondence from FIFA that it will not entertain the antitrust and RICO issues. The question is whether the Court should continue the stay or allow the Plaintiff to proceed to litigate the non-arbitrable issues now before this Court. However, FIFA has not stated what, if any, issues it will consider. On any issue FIFA decides to arbitrate, the stay is mandatory. *Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 142 (7th Cir., 1978). However, whether to stay the remaining non-arbitrable issues is considered to be within the discretion of the trial court even though this may lead to

piecemeal litigation. *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 361 (7th Cir., 1997). However, an exception to discretion to hear non-arbitrable issues while arbitration is proceeding, is where there is a risk of inconsistent rulings and where the pending arbitration is likely to resolve issues material to the non-arbitrated issues. *Volkswagen Of America, Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966 (7th Cir., 2007).

Applying these principles to the case before the Court, it is apparent that the stay ought to be continued to determine what if any issues FIFA will agree to decide. The basic issue that may well be decided by FIFA is whether USSF has the authority to sanction soccer matches and, as a corollary, whether it has the authority to charge sanctioning fees and require posting of bonds. It is Plaintiff's contention that it has no such authority because the statutory authority and mandate of the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §§ 220501, *et seq.*, upon which USSF relies, grants the USSF only the right to exercise jurisdiction over international amateur athletic activities and not professional. Whether the USSF has exceeded its mandate is an issue intertwined through all of Plaintiff's seven claims. Should FIFA hold one way and the Court the other could lead to inconsistent decisions. Granted, whether FIFA holds that USSF has sanctioning authority does not decide the issue whether USSF has exercised its authority in conformance with RICO and antitrust law,

but for all other claims and, certainly, as a measure of damages, a decision as to the USSF's authority to impose fees and a bond will be necessary.

### III. <u>CONCLUSION</u>

The Court, therefore, will exercise its discretion to continue the stay for another sixty (60) days in order to determine what, if any, issues FIFA will consider.  However, the Court will not wait an unreasonably long time to allow FIFA to make the decision.  The Plaintiff has already waited a year and one half since the Court ordered arbitration in order to receive its day in court.

**IT IS SO ORDERED.**

                                    Harry D. Leinenweber, Judge
                                    United States District Court

**DATE:** November 7, 2008